IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIAM JAMES STEELE,            :

    Plaintiff,                   :

vs.                              :   CIVIL ACTION 07-00422-KD-B

SHERIFF JESSE LANGLEY, *et al.*, :

    Defendants.                  :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment constitutional rights.[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Docs. 20 and 28), and Plaintiff's opposition thereto.  (Doc. 30).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

---

[1] Plaintiff originally filed this action on June 8, 2007, (Doc. 1), but, because he used outdated complaint forms, on July 18, 2007, this Court ordered Plaintiff to file his Complaint using updated forms.  (Doc. 3).  Subsequently, Plaintiff filed his new Complaint on the proper forms on July 30, 2007, (Doc. 4), and by this Court's Order of July 18, 2007, this Complaint supersedes the original. (Doc. 3).

## I.  SUMMARY OF ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

On April 30, 2005, Plaintiff was arrested by the Demopolis Police Department for the crimes of Burglary III, Possession of Burglary Tools, and Possession of a Forbidden Fire Arm.  (Doc. 20, Exs. A and B).  In his Complaint, Plaintiff claims that he was assaulted by Demopolis police officers at the time of the arrest; however, Plaintiff has not named any Demopolis police officers as Defendants in this action, and has not raised the alleged assault as an issue in this lawsuit.  (Doc. 4 at 4). Following Plaintiff's arrest, but prior to being booked into the Marengo County Jail, Plaintiff was taken to the emergency room at Benjamin W. Whitfield Memorial Hospital, where he was examined by Dr. Ronnie Chu.  (<u>Id.</u>; Doc. 20).  According to Plaintiff, Dr. Chu took x-rays of his body.

Plaintiff claims that during the alleged "assault" involving the Demopolis police officers, he was hit in the head with an object, which caused his head to swell, and resulted in a contusion and lacerations on his wrists, from the "abuse of officers handcuff procedures in the assault."  (Doc. 4 at 4). Plaintiff complains that he was not given anything for pain, and

that around 11:00 p.m, he left the hospital and was booked into the Marengo County Jail. (Id.). According to Plaintiff, the next morning he was suffering physically from the "beating" that he had received. He requested and was denied pain medication. Plaintiff alleges that he asked Defendant Kevin McKinney for permission to see a doctor and that he filled out several sick call request forms; however, his requests for medical treatment were denied. (Id. at 4-5). Plaintiff alleges that Defendant Sheriff Langley knew that he was injured and in need of medical treatment and was also was aware that Plaintiff was denied medical treatment from April 30, 2005, until August 4, 2005. (Doc. 4 at 5).

The medical records reflect that while at the Benjamin W. Whitfield Memorial Hospital on April 30, 2005, Plaintiff complained of chronic pain to his feet and also pain to his wrists and neck. (Doc. 20, Ex. F at 4). It is noted that Plaintiff was observed to have slight redness and swelling on his hands and feet. X-rays were performed, which indicated that Plaintiff suffers from degenerative disc disease. (Id. at 3-4). Plaintiff was administered a dose of Motrin for pain, along with a tetanus shot. Dr. Chu, who examined Plaintiff at the Hospital, did not note that Plaintiff suffered from any serious medical condition. (Id. at 1-4). Before leaving the Hospital,

3

Plaintiff was also examined by Dr. Simmons, who determined that Plaintiff was "acceptable for admission into jail." (Doc. 20, Ex. G).

The record evidence reflects that on August 2, 2005, Plaintiff submitted a written request for medical attention. (Doc. 20, Ex. H).   Plaintiff complained that he suffered from pain in his head, teeth, ears, hands, and feet, and asserted that this pain had been ongoing since April 30, 2005.   (Id.)   On August 3, 2005, Plaintiff was taken to see Dr. Ronnie Chu for treatment.   (Doc. 20, Exs. J, K).   Plaintiff complained to Dr. Chu of head pains, a tooth ache, and sore hands.   (Doc. 20, Ex. K).   Dr. Chu prescribed medication for Plaintiff's blood pressure, as well as Tylenol for pain relief.   (Id. at 1-2). According to Defendants, per Dr. Chu's instructions, Plaintiff was provided the blood pressure medication from August 2005, until his release into the custody of the Department of Corrections. (Doc. 20 at 4).

## II.  PROCEDURAL ASPECTS OF THE CASE

Plaintiff, on June 8, 2007, filed the present § 1983 action against Defendants Sheriff Jesse Langley and Kevin McKinney, alleging the denial of proper medical treatment during his

incarceration at the Marengo County Jail.[2]  (Doc. 4).  Plaintiff claims that his medical treatment was unnecessarily delayed, and resulted in "pain and suffering."  He seeks compensatory damages in the amount of $300,000.  (Id. at 7).

In their Special Report and Answer filed on March 10, 2008, and July 11, 2008, respectively, Defendants deny Plaintiff's allegations and assert the defenses of absolute and qualified immunity, statute of limitations, and failure to comply with the Prison Litigation Reform Act.[3]   (Docs. 20, 28).  In an Order

---

[2]  As previously noted, Plaintiff originally filed this action on June 8, 2007, but was ordered by this Court to file his Complaint using this Court's updated forms.  (Docs. 1 and 3).  Plaintiff filed his amended complaint on July 30, 2007.

[3]   Plaintiff does not specify whether he is suing Sheriff Langley in his official or individual capacity or both.  Thus, the Court will consider both.  As an Alabama sheriff, Defendant Langley is a state official entitled to absolute immunity from suit for damages in his official capacity.  See West v. Tillman, 496 F.3d 1321, 1326 n.7 (11th Cir. 2007) (citing Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997)).  This immunity also extends to Defendant McKinney who, employed by Sheriff Langley, represents the State in his duties at Marengo County Jail. Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Having found herein that Plaintiff's allegations do

dated August 7, 2008, Defendants' Special Report and Answer were converted into a Motion for Summary Judgment, and Plaintiff was provided notice and an opportunity to respond. (Doc. 29). Defendants' motion and Plaintiff's response in opposition thereto are now before the Court.

III.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of Civil Procedure</u> grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed. R. Civ. P.</u> 56(c).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. <u>Barfield v. Brierton</u>, 883 F.2d 923, 934 (11th Cir. 1989).

---

not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." <u>Saucier</u>, 533 U.S. at 201.

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at
325-27.

"[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party. . . .  If the evidence is merely
colorable, . . . or is not significantly probative, . . . summary
judgment may be granted." Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary
judgment is mandated where a party 'fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden
of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs.,
Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## IV.  DISCUSSION

As discussed above, Plaintiff seeks redress in this action
pursuant to 42 U.S.C. § 1983 for an alleged constitutional

deprivation arising out of his incarceration at the Marengo
County Jail April 30, 2005 through August 4, 2005.  (Doc. 4).
Specifically, Plaintiff claims that Defendants unconstitutionally
denied him medical treatment from April 30, 2005, when he was
arrested, until August 4, 2005.  (Id.).

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983 (1994).

In addressing Plaintiff's claims brought under § 1983, the
Court begins its analysis "by identifying the specific
constitutional right allegedly infringed. . . ." Graham v.
Connor, 490 U.S. 386, 394 (1989).   In this case, the record
shows that Plaintiff was initially held in the Marengo County
Jail as a pretrial detainee on charges of Third Degree Burglary,
Possession of Burglary Tools, and Possession of a Forbidden Fire
Arm.  (Doc. 20, Ex. A).  As a pretrial detainee, Plaintiff was
protected by the Fourteenth Amendment.  See Williams v. Limestone

8

County, Ala., 198 Fed. Appx. 893, 896 n.3 (11th Cir. 2006) (unpublished) (citing Bell v. Wolfish, 441 U.S. 520 (1979)). "[T]he minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner; both the right to due process and the right to be free from cruel and unusual punishment are violated by a government official's deliberate indifference to serious medical needs." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the objective existence of a "serious" medical need. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (1994) (citing Hudson v.

9

<u>McMillian</u>, 503 U.S. 1, 10 (1992)).  "[A] 'serious' medical need
is one that has been diagnosed by a physician as mandating
treatment or one that is so obvious that even a lay person would
easily recognize the necessity for a doctor's attention."  <u>Hill</u>,
40 F.3d at 1187 (citations omitted).  "[T]he medical need must be
'one that, if left unattended, pos[es] a substantial risk of
serious harm.'"  <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir.
2003) (quotation marks and citations omitted).

Next, in order to meet the required subjective element of an
Eighth Amendment denial of medical care claim, a plaintiff must
demonstrate "deliberate indifference" to a serious medical need.
<u>Hill</u>, 40 F.3d at 1186.

> In <u>Estelle</u>, the Supreme Court established
> that "deliberate indifference" entails more
> than mere negligence.  <u>Estelle</u>, 429 U.S. at
> 106, 97 S. Ct. 285; <u>Farmer</u>, 511 U.S. at 835,
> 114 S. Ct. 1970.  The Supreme Court clarified
> the "deliberate indifference" standard in
> <u>Farmer</u> by holding that a prison official
> cannot be found deliberately indifferent
> under the Eighth Amendment "unless the
> official *knows of* and *disregards an excessive
> risk to inmate health or safety*; the official
> must both be aware of facts from which the
> inference could be drawn that a substantial
> risk of serious harm exists, and he must also
> draw the inference."  <u>Farmer</u>, 511 U.S. at
> 837, 114 S. Ct. 1970 (emphasis added).  In
> interpreting <u>Farmer</u> and <u>Estelle</u>, this Court
> explained in <u>McElligott</u> that "deliberate
> indifference has three components: (1)
> subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by

10

>    conduct that is more than mere negligence."
>    <u>McElligott</u>, 182 F.3d at 1255; <u>Taylor</u>, 221
>    F.3d at 1258 (stating that defendant must
>    have subjective awareness of an "objectively
>    serious need" and that his response must
>    constitute "an objectively insufficient
>    response to that need").

<u>Farrow</u>, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." <u>Hill</u>, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." <u>Id.</u>; <u>accord</u> <u>Lancaster</u>, 116 F.3d at 1425 (applying the Fourteenth Amendment).

"The tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." <u>Hill</u>, 40 F.3d at 1188 (emphasis in original) (quoting <u>Harris v. Coweta County</u>, 21 F.3d 388, 393-94 (11th Cir. 1994)).

>    The "seriousness" of an inmate's medical
>    needs also may be decided by reference to the
>    *effect* of delay in treatment. <u>Gaudreault</u>,
>    923 F.2d at 208; <u>Monmouth County</u>, 834 F.2d at
>    347. Where the delay results in an inmate's

suffering "a life-long handicap or permanent
loss, the medical need is considered
serious." Id.

Hill, 40 F.3d at 1188 (emphasis in original).  "An inmate who complains that delay in medical treatment rose to a constitutional violation must place **verifying medical evidence** in the record to establish the detrimental effect of delay in medical treatment to succeed." Id. (emphasis added) (footnotes omitted).

Although Plaintiff provides very little information regarding his alleged medical problems other than reference to pain that he claims to have suffered following his arrest on April 30, 2005, for which he undisputedly received medical treatment, the Court will assume, for purposes of this motion, that Plaintiff's medical problems constitute an objectively serious medical need.  Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need.

As noted supra, the record reflects that following Plaintiff's arrest on April 30, 2005, he was taken to the Benjamin W. Whitfield Memorial Hospital, where Plaintiff complained of chronic pain to his feet, as well as wrist pain and neck pain.  (Doc. 20, Ex. F at 4).  Plaintiff's medical records

12

indicate that his care was "non urgent."  While at the hospital, Plaintiff was examined and treated by Dr. Ronnie Chu, who found Plaintiff's hands to be slightly swollen and red.  Plaintiff was afforded x-rays and given a tetanus shot.  Dr. Chu concluded that Plaintiff suffered from degenerative disc disease and arthritis. Plaintiff was given a tetanus shot and a single dose of Motrin 400 mg.  (Id. at 4-5, 8).  Plaintiff was also examined by Dr. Simmons, who opined that Plaintiff was acceptable for admission into jail. (Doc. 20, Ex. G).  On this occasion, neither doctor prescribed any ongoing treatment for Plaintiff.

The record is silent as to any alleged medical problems of Plaintiff until his written request for medical care dated August 2, 2005.[4]  (Doc. 20, Ex. H).  In his written request, it appears that Plaintiff reported that he was suffering from head, eye, ear, and tooth pain, as well as foot pain.  Plaintiff also complained that he had been suffering from this pain since April 30, 2005, the date of his arrest.  (Id.).  At the bottom of the request form, doctor's instructions are written that list two medications and their dosages, one for the pain medication

---

[4]

At times in their Special Report, Defendants appear to reference this Medical Request as having been dated August 5, 2005, however, it appears to the Court that this request was dated August 2, 2005, and in fact, according to Plaintiff's medical records, he was taken to see a physician on August 3, 2005.  (Doc. 20, Exs. J, K).

Tylenol and one for Benicar, a blood pressure medication. (Id.). As best the Court can discern, these prescriptions appear to be have been authorized by Dr. Ronnie Chu following his examination of Plaintiff on August 3, 2005. (Doc. 20, Exs. J, K at 3).

Medical records from Physician's Family Healthcare indicate that Plaintiff was treated by Dr. Ronnie Chu on August 3, 2005. (Doc. 20, Ex. K at 3). Plaintiff complained of blurry vision and of a head injury from April of 2005. He also complained of ear pain and of his right hand being sore from his handcuffs. (Id.). Additionally, Plaintiff reported to Dr. Chu that he had been out of his blood pressure medication for four months. (Id.). Defendants contend and Plaintiff does not dispute that Plaintiff regularly received his blood pressure medication following his August 2005 visit to Dr. Chu up until he was released into the custody of the Department of Corrections.[5] (Id.).

In this action, Plaintiff claims that his constitutional rights were violated because he endured pain and suffering as a result of the delay in medical care from April 30, 2005, until August 4, 2005. Although Plaintiff does not actually allege that

---

[5] It is unclear as to when Plaintiff was released into the custody of the Department of Corrections, however, Plaintiff only claims to have been denied or delayed medical care until August 4, 2005. (Doc. 4). His medical records, however, reflect that he was treated by Dr. Ronnie Chu on August 3, 2005, and Plaintiff has not objected to these records.

Defendants were "deliberately indifferent" to his serious medical needs, this Court, construing Plaintiff's vaguely pled Complaint liberally, will assume that the gist of Plaintiff's complaint is that Defendants were "deliberately indifferent" to his medical needs.  However, this is not borne out by the record.

In order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Plaintiff's health.  Farrow, 320 F.3d at 1245.  It is not at all clear what specific condition or ailment Plaintiff's complaint of delay of medical care actually encompasses in this action.  The allegations of Plaintiff's Complaint center on the alleged pain and suffering that he endured following his arrest (or "assault," as he terms it) by the Demopolis Police Department.  However, the evidence is undisputed that following his arrest, Plaintiff was immediately taken to the local hospital and treated by a physician, given x-rays, medication, and a tetanus shot.  (Doc. 4; Doc. 20).  In this instance, Plaintiff's real dissatisfaction with the treatment appears to stem from the fact that Plaintiff was given Motrin, as opposed to a stronger type of pain medication in response to his report of pain.  This however was a medical decision made by the hospital physician, not by Defendants.  Furthermore, the physician on staff, as opposed to Defendants, made the decision that Plaintiff was ready to be

discharged and physically capable of being booked into the Marengo County Jail.

Although Plaintiff asserts, in his Complaint, that the following morning, he requested medication for the pain he was suffering, there is no record of a request for pain medication or for medical care prior to August 2, 2005. Further, there is nothing in the hospital records to indicate that Plaintiff suffered a "severe beating," as his only treatment was a single dose of Motrin 400 mg and a tetanus shot. (Doc. 20, Ex. F at 5). Again, while Plaintiff's complaints to the emergency room staff the night of his arrest included "chronic" pain to feet, along with neck and wrist pain, his x-rays finding was degenerative disc disease. (Id. at 4-8). Plaintiff has made no attempt to dispute the accuracy of these records. Additionally, following Plaintiff's arrest, the only medical request contained in the record is dated August 2, 2005. While Plaintiff has made vague and conclusory allegations that he requested medical care prior to August 2, 2005, he has not disputed the accuracy of the jail records, nor has he offered any probative evidence to support his assertions.

During Plaintiff's August 3, 20005 visit to Dr. Chu, he reported that he had been out of blood pressure medication for 4 months. While the Court finds it disturbing that Plaintiff would

have been without his blood pressure medication for four months, this fact alone is not sufficient to establish a constitutional violation, nor does the fact that Plaintiff might have experienced delay in receiving Tylenol for his pain.   While it might be argued that Defendants were negligent in administering to Plaintiff blood pressure medication and pain medication, mere negligence is not sufficient to support a constitutional claim. See Mandel v. Doe, 888 F. 2d 783, 787-88 (11th Cir. 1989) (solely showing negligence or medical malpractice "not sufficient" to constitute deliberate indifference).  Plaintiff has not proffered any evidence which suggests deliberate indifference on the part of Defendants.   Moreover, Plaintiff has not submitted any "verifying medical evidence" showing that delay in medical treatment resulted in any diminishment of his physical or mental health.  Hill, 40 F.3d at 1188 (emphasis added).  The absence of such evidence further undermines a finding that Defendants were deliberately indifferent to Plaintiff's serious medical needs.

While "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain," Hill, 40 F.3d at 1187, the record in this case simply does not show such.  The record does reflect that Plaintiff was given medical care on April 30, 2005,

at Benjamin W. Whitfield Memorial Hospital, and then again on August 3, 2005, at the office of Dr. Ronnie Chu.

> "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." <u>Hill</u>, 40 F.3d at 1189.

<u>Id.</u>

Considering all of the circumstances surrounding the treatment that Plaintiff received for his medical problems, along with Plaintiff's vague and conclusory allegations, the Court cannot conclude that any of the Defendants were deliberately indifferent to Plaintiff's medical issues. Thus, Plaintiff has failed to establish the subjective element of his denial of medical care claim.

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. <u>Celotex Corp.</u>, 477 U.S. at 322.

"No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation." <u>Bennett v. Parker</u>, 898 F.2d 1530, 1534 (11th Cir. 1990). Therefore,

since no constitutional violation has been established, Defendants' Motion for Summary Judgment is due to be granted.

### V.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

Accordingly, it is recommended that Defendants Sheriff Jesse Langley and Kevin McKinney's Motion for Summary Judgment be GRANTED and that Plaintiff's Complaint be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **26th** day of **January 2009.**


　　　　　　　　　　　**/s/ SONJA F. BIVINS**
　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.   <u>**Objection**</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge=s recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

    A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party=s response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the

magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.